**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA**
**for the use and benefit of ROY SHANNON**                                    **PLAINTIFF**

**VERSUS**                                                     **CIVIL ACTION NO.  1:05cv54JMR**

**FEDERAL INSURANCE COMPANY, et al.**                               **DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court on the defendants' Motion [37-1] for Summary Judgment, its Memorandum in Support [40-1], the Plaintiff's Memorandum in Response [47-1], and the defendants' Rebuttal [48-1].  Therefore, the Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, finds that the defendants' Motion [37-1] for Summary Judgment is well taken, and should be granted.

## STATEMENT OF CASE

Whitesell-Green, Inc. ("WGI") and W.G. Yates & Sons Construction Company ("Yates") formed a joint venture ("Joint Venture") for the purpose of competing for and performing construction contracts at Keesler Air Force Base ("Keesler") in Biloxi, Mississippi, which were awarded and administered by the U.S. Government through the Department of the Navy, Southern Division, Naval Facilities Engineering Command ("Government").  (Defendants' Proposed Findings of Fact, ¶ 1).  Plaintiff Roy Shannon ("Shannon") was a project manager for WGI.  Shannon assumed the position of project manager for the Joint Venture of WGI and Yates to perform contracts at Keesler.  According to Shannon, Yates agreed to form the Joint Venture and that Shannon would run the Joint Venture until such time as the job became unprofitable and then they would re-evaluate management of the job.  (Defendants' Proposed Findings of Fact, ¶ 4).  Shannon

transferred employment from WGI to the Joint Venture in October 1998 and was employed by the Joint Venture as its project manager at Keesler for over five years, until early February 2004.

Shannon took the job as project manager for the Joint Venture at a substantial increase in pay over what he had been earning as a project manager for WGI.  The Joint Venture paid Shannon a salary starting at $2,000 per week and also paid annual Christmas bonuses to Shannon of at least $50,000. (Defendants' Proposed Findings of Fact, ¶¶ 11-13).  Shannon acknowledges being paid his salary and bonuses.  His claims before the Court are for "additional monetary compensation" over and above the $150,000 a year he made as a project manager.  Shannon also had use of a company SUV.

Shannon's contract of employment with the Joint Venture was unwritten.  However, Shannon did sign an application of employment that said: "I understand that I am an 'at will' employee and that my employment may be terminated at any time and with or without cause."  (Defendants' Proposed Findings of Fact, ¶ 7).

The first Government contract awarded to the Joint Venture at Keesler was Contract No. N63467-97-C-0866, Student Dormitories and Training Support Facilities ("the First Project"). (Defendants' Proposed Findings of Fact, ¶ 9).  The award of this First Project was made on August 31, 1998, and performance commenced in October 1998, which is also the time Shannon began employment as the Joint Venture's project manager at Keesler.

Shannon alleges an agreement with the Joint Venture to pay over and above his salary and bonuses "additional monetary compensation" equal to one-half the profits earned by the Joint Venture in excess of the anticipated profits earned by the Joint Venture for the First Project.  The alleged agreement was never put into writing.  (Defendants' Proposed Findings of Fact. ¶¶ 18, 20,

and 21).

Following the First Project, the Joint Venture was awarded eleven other Government projects ("the Additional Projects") at Keesler during Shannon's tenure as project manager. For these additional projects, Shannon asserts there was an unwritten agreement by the Joint Venture to pay Shannon "additional monetary compensation" over and above his salary based upon one percent (1%) of the respective contract amounts, regardless of whether the contracts made any money. (Defendants' Proposed Findings of Fact, ¶¶ 16, 24, 26).

The Joint Venture terminated Shannon's employment in February 2004, over five years after he began working as the Joint Venture's project manager. (Defendants' Proposed Findings of Fact, ¶ 3).

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97. "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general

allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

## ANALYSIS

The defendants assert that they are entitled to summary judgment on each count of the complaint. The complaint consists of four counts(*See* Complaint):

Count I: Breach of Contract

Count II: Miller Act Claim

Count III: Quantum Meruit Recovery

Count IV: Wrongful Discharge

## COUNT I

There is no dispute that the plaintiff had an unwritten employment contract with the defendants. The plaintiff claims that this contract was breached because he never received the extra payments he alleges that he is owed under agreements to pay him percentages of project profits and values. The defendants assert that a claim for a breach of this employment contract is barred by the

statute of limitations.  Section 15-1-29 of the Mississippi Code of 1972, as amended provides that "an action based on an unwritten contract of employment shall be commenced within one (1) year next after the cause of such action accrued, and not after."

Shannon's Complaint was filed on February 2, 2005.  In his Complaint, Shannon alleges that he made repeated demands on the Joint Venture to pay the remaining balance owed "since beginning on or about August of 2000."  (*See* Complaint at ¶ 22).

In Mississippi, a cause of action accrues for purposes of statutes of limitation as soon as the cause of action exists.  *See, e.g., Greenlee v. Mitchell*, 607 So.2d 97,110 (Miss. 1992).  For breach of contract claims, the cause of action accrues "when the breach, not the injury, accrues," or "at the time of the breach regardless of when damages resulting from the breach occur."  *First Trust Nat'l Ass'n v. First Nat'l Bank of Commerce*, 220 F.3d 331, 334-35 (5th Cir. 2000)(applying Mississippi law).  In his Response, the plaintiff challenges the date of the breach and also argues equitable estoppel to toll the statute of limitations.  Equitable estoppel can be asserted to a statute of limitations defense to avoid serious injustice if there is inequitable conduct.  *Trosclair v. Miss. Dep't of Transp.*, 757 So.2d 178, 181 (Miss. 2000).  "Estoppel is action or nonaction that induces another's reliance thereon, either in the form of action or nonaction, to his or her detriment."  *Carr v. Town of Shubuta*, 733 So.2d 261, 265 (Miss. 1999)(quoting *Fritsch v. St. Croix Cent. Sch. Dist.*, 515 N.W.2d 328 (Wis. Ct. App. 1994)).  For equitable estoppel to apply, there must be a representation by a party, reliance by the other party, and a change in position by the relying party.  *Carr*, 733 So.2d at 265.

The Court finds that equitable estoppel does not apply in the case sub judice because Shannon did not rely on a representation from the Joint Venture and did not change his position in

anticipation of receiving compensation beyond his salary and bonuses.  According to Shannon's deposition, his superior, Bill Whitesell, was not going to present Shannon's proposals for additional monetary compensation to Yates until after the First Project had been completed.  (Shannon Deposition at page 81, line 23; page 82, line 3).  Shannon admitted that he made repeated demands on the Joint Venture for the money he claims since August of 2000.  Shannon, by his own admission, demanded the money many times and never received confirmation that the proposal would be approved.  Thus, Shannon did not make any changes in reliance on a promise of being paid any additional money.

Without equitable estoppel, a breach of contract claim on an unwritten contract of employment must be brought within one year of the accrual of the action.  Several dates could be considered the accrual date for the First Project.  Shannon contends that he is entitled to half of the profits in excess of the anticipated profits from the First Project.  According to Shannon, he would be paid when the First Project was completed.  Shannon admitted in his Answers to Interrogatories that he knew as a fact on or about September 29, 2003, that profits on the First Project would exceed anticipated profits.  (Defendants' Proposed Findings of Fact, ¶ 23).  The Court finds that the earliest date that a claim accrued on the alleged breach for the First Project is August 2000 and the latest date is September 29, 2003.  Shannon's complaint was filed February 2, 2005, over a year beyond both dates.  The Additional Projects were awarded from February 29, 2000 to December 29, 2003.  Shannon contends that he was entitled to a percentage of these contracts when they were awarded, not completed.  The latest date a claim accrued from the Additional Projects is December 29, 2003, more than a year before Shannon filed his complaint.  Shannon's claims for breach of contract are therefore barred by the one year statute of limitations in Section 15-1-29 of the Mississippi Code of

1972.

## COUNT II

Count II of the complaint alleges claims under payment bonds furnished by sureties to the Joint Venture under 40 U.S.C. §§3131 (2002) ("the Miller Act) with respect to the Keesler contracts. The Miller Act provides that every person who has furnished "labor in carrying out work provided for in a contract" for which a payment bond is furnished may bring suit for non-payment.  40 U.S.C. §3133(b)(1).  However to recover under the Miller Act, the plaintiff's claims must qualify as "labor in carrying out work provided for in the contract."

The Miller Act "is highly remedial in nature . . . and is entitled to a liberal construction and application in order to properly effectuate the Congressional intent to protect those whose labor and materials go into public projects." *MacEvoy Co. v. United States*, 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944)(citations omitted).  *See also F.D. Rich Co.*, 417 U.S. at 124, 94 S.Ct. at 2162-63; *United States v. Aetna Casualty & Surety Co.*, 480 F.2d 1095, 1100 (8th Cir. 1973).  However, only certain professional supervisory work is covered by the Miller Act, namely, "skilled professional work which involves actual superintending, supervision, or inspection at the job site." *United States ex rel. Naberhaus-Burke, Inc. v. Butt & Head, Inc.*, 535 F.Supp.1155, 1160 (S.D. Ohio 1982).  Accordingly, "[p]laintiff can only recover on the payment bond . . . to the extent that [he] performed on-site services."  *Id.*  "It may be true that the term 'labor' in this statute, as generally in statutes relating to mechanics' liens, refers to physical labor rather than technical and professional skill and judgment, but an architect or other skilled man who actually superintends the work as it is done is by the weight of authority furnishing labor . . . It was so held under the federal statute where the superintendent did some manual labor in *Bankers' Surety Co. v. Maxwell* (C.C.A.) 222 F. 797

7

. . ." *United States v. Shea-Adamson Co.*, 21 F.Supp. 831, 837 (D.Minn.1937)(*quoting American Surety Co. of New York v. United States*, 76 F.2d 67, 68 (5th Cir. 1935)(citations omitted).   Thus, on-site supervisory work of a project manager falls within the purview of the Miller Act if such a superintendent did some physical labor at the job site or might have been called upon to do some on-site manual work in the regular course of his job.  *See American Surety Co. of New York*, 76 F.2d at 68.

Shannon contends that his labor was performance "going far beyond the regular duties of the project manager as set out in the Joint Venture Agreement and included negotiating new contracts, determining bid amounts and change orders, preparing bid proposals, negotiating and signing new subcontracts and purchase orders-all without written or verbal permission of WGI or Yates." (Complaint, ¶13).  Shannon also claims that his labor included living on the job site, cleaning of the office and bathrooms, and many other on-site duties and responsibilities.  (Shannon Deposition, p. 72, lines 8-11; p. 96, line 19; p. 105, line 18; p. 106, line 15; Whitesell Deposition, p. 46, lines 6-8). Shannon was paid and accepted his salary for his duties as the project manager.  There are no claims from Shannon that he performed any physical labor that went towards completion of the construction activities on the job site.  Living on the job site and performing routine office maintenance is not enough to constitute labor that went towards completing the construction job.  The Court finds that Shannon's claims do not qualify as labor under the Miller Act and summary judgment should be granted on these claims.

## COUNT III

The plaintiff brings quantum meruit claims under Count III.  The Mississippi Supreme Court has held that "'[w]here there is a contract, parties may not abandon same and resort to quantum

meruit.'" *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So.2d 954, 970 (Miss. 1999)(quoting *Redd v. L&A Contracting Co.*, 246 Miss. 548, 555, 151 So.2d 205, 208 (1963)).

Both parties agree that Shannon and the Joint Venture had an unwritten employment contract. There is also no disagreement that Shannon was fully paid and that he accepted his salary and bonuses for the time he was employed. Shannon states in his Response that he "does not seek to abandon his contract claim and resort to quantum meruit, but states his quantum meruit claim as an alternative theory of recovery in an enforceable agreement is found not to exist. (Plaintiff's Response, p. 15). The Court finds, by parties' admission, that there was a valid contract between Shannon and the Joint Venture. Claims on that contract are barred by the statute of limitations. Therefore, there is no need for an alternative theory of recovery.

This claim for additional monetary compensation arises out of Shannon's employment with the Joint Venture. The claims for a breach of Shannon's employment contract have been found above by the Court to be barred by the statute of limitations. Miss. Code Ann. § 15-1-29, which enumerates the one year statute of limitations, applies to contracts, both express and implied.

The services Shannon provided for the First Project for which he seeks payment were complete by September 2003 at the latest. This date, as discussed previously, is the "completion date" for the First Project.

As to the additional projects, Shannon's payments on those became due when the contracts were awarded, not completed. The last of the Additional Projects was awarded in December 2003. Shannon filed his complaint on February 2, 2005, over a year beyond the latest of the applicable dates, so these claims are also barred by the one year statute of limitations.

## COUNT IV

Shannon asserts a claim for wrongful discharge under Count IV.  Under Mississippi law, "absent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all excepting reasons only declared legally impermissible." *Levens v. Campbell*, 733 So.2d 753, 760 (Miss. 1999)(citing cases); *see also Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1088 (Miss. 1987)("at will" rule applies where there is no contract of employment or contract does not specify a definite term of employment).

There is no contract between Shannon and the defendants expressly providing anything to the contrary of an "at will" arrangement.  Mississippi law states that agreements "for no definite period of time" are "at will" and entitle the employer to end employment "at any time." *Johnson v. Baptist Mem'l Hosp.-Golden Triangle, Inc.*, 843 So.2d 102, 105 (Miss.Ct.App. 2003).

In addition to having no contract expressly contrary to an "at will" arrangement, Shannon signed documents that put him on notice that his employment was "at will."  The Joint Venture's Application for Employment filled out and signed by Shannon says in relevant part: "I understand that I am an "at will" employee and that my employment may be terminated at any time with or without cause."  (Defendants' Proposed Findings of Fact, ¶ 7).  Therefore, the Court finds that Shannon was an "at will" employee and that summary judgment should be granted on the claim for wrongful discharge.

## CONCLUSION

For the foregoing reasons, this Court is of the opinion the defendants' Motion [37-1] for Summary Judgment is well taken, and should be granted and that all claims against the

defendants should be dismissed with prejudice.

This the 11th day of August, 2006.

_s/ John M. Roper, Sr._

CHIEF UNITED STATES MAGISTRATE JUDGE